CLEMENTS *v.* MACHEBOEUF ET AL.

1. Where a party, holding a patent from the United States for certain lands, authorized, by a power of attorney, his agent " to act upon the application and demand of any person actually owning " town-lots in Denver City, within the limits of the lands, and to execute and deliver deeds to such persons who "may apply for the same within three months from" a certain date, — *Held,* that the "application and demand" must be made within that time; but the authority of the agent to adjudicate the claims was not so limited.

2. Where a party alleges that a deed executed by his attorney, under a power to convey, is invalid for matters not apparent on its face, the burden of proving them is on such party.

APPEAL from the Supreme Court of the Territory of Colorado.

The case was argued by *Mr. J. W. Denver* for the appellant, and by *Mr. R. T. Merrick* for the appellees.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Equity exercises jurisdiction in cases of accident, mistake, or fraud, where the party has not a plain, adequate, and complete remedy at law. Where the remedy at law is plain, equity will not interfere if the remedy is also adequate and complete; but, if the remedy at law is doubtful, the court of equity will retain the case, and, if the proofs are satisfactory, will grant relief.

Jurisdiction to a partial extent may exist at law; but, if the remedy there is not adequate, — that is, if the party cannot attain at law the full justice of the case, — he may, if he sees fit, pursue his remedy in equity. Nor is the court of equity closed to the party unless the remedy at law is complete, and will secure to the party the whole right involved, in a manner as just and perfect as would be attained in a suit in equity. 1 Story's Eq., sect. 33; *Insurance Co. v. Bailey,* 13 Wall. 621.

Fee-simple title to the lands described in the bill of complaint was vested in the complainant by virtue of a patent from the United States. Twelve or more persons are named in the bill of complaint as the principal respondents in the suit; and the complainant alleges that one James Hall, pretending to act in his behalf, as his attorney in fact, on the several days mentioned in the bill of complaint, without any authority what-

ever, conveyed by deeds of warranty certain portions of said lands, as therein described, to each of the several respondents named in the bill of complaint. The charge, in effect, is, that the several respondents, as such grantees, had full notice that the person pretending to be the agent of the complainant acted, in making the said several conveyances, without any authority whatever from the complainant; and that the respondents combined with the pretended agent to cheat, wrong, and defraud the complainant out of his title to said lands, and still refuse to restore him to his just rights. Wherefore the complainant prays that the several deeds executed by the said pretended agent to the said several respondents may be decreed to be cancelled, and that the lots may be returned to the complainant wholly discharged from all subsequent conveyances executed by such grantees, and for general relief.

Service was made; and the respondents appeared, and demurred to the bill of complaint. Hearing was had; and the court overruled the several demurrers, giving leave to the respondents to answer. Pursuant to that leave, the respondents filed several answers, setting up substantially the same defence. Suffice it to say, that they admit that the complainant was the owner of the lands in fee-simple, and that certain portions of the same were conveyed to them by the person professing to act as the agent of the complainant, as alleged in the bill of complaint, but deny that the person who executed the respective conveyances acted without authority from the complainant, or that they ever combined with that person to cheat, wrong, or defraud the complainant, as alleged in the bill of complaint. Instead of that, the respective respondents allege that the agent named, by virtue of the powers of attorney annexed to the answer, or by virtue of one or both of the same, conveyed to them respectively the certain lots or portions of said lands for a valuable consideration, as more particularly described in the bill filed by the complainant. Answers, differing in certain particulars, were filed by the respondents; but the propositions involved in the succinct analysis of the one given presents the main points of defence set up by all the respondents.

All of the conveyances were made by the alleged agent of the complainant; and it appears that they are all of record in

the office of the clerk and recorder of the county of Arapahoe, where the lands are situated. Annexed to the answers are the powers of attorney, under one or both of which it is claimed by the respondents that the respective described portions of the lands were conveyed to them in fee-simple. Exceptions filed to the answer of some of the respondents were sustained by the court; but it is unnecessary to examine any question involved in the exceptions, as the repondents acquiesced in the decision of the court, and filed amended answers, in conformity to the opinion of the court.

Leave was given by the court to the solicitors of certain of the respondents to withdraw their appearance for those respondents; and thereupon the bill of complaint as to those parties was dismissed on motion of the complainant. Default was made by one of the respondents served, and the bill of complaint as to him was taken as confessed; and the conveyance made to him by the agent was decreed to be cancelled and annulled, as prayed in the bill of complaint. Three others failed to file an amended answer, as required by the order of the court; and the bill of complaint as to those respondents was also taken as confessed.

Matters of the kind being all adjusted, the complainant filed a general replication, and proceeded to take proofs. Among other things, he introduced the patent from the United States, and the deposition of Caleb B. Clements, his father; and the master, appointed to take testimony, annexed to his report to the court the two exhibits attached to the answers of the respondents. No proofs were introduced by the respondents. They rested the case upon their deeds of conveyance, and on the powers of attorney annexed to the answers. Hearing was had; and the court of original jurisdiction entered a decree in favor of the complainant, cancelling the several conveyances executed to the respondents. Immediate appeal was taken to the Supreme Court of the Territory, where the parties were again heard; and the Supreme Court reversed the decree of the District Court for the county, and remanded the cause to that court, with directions to dismiss the bill of complaint, except as to the respondents, against whom decrees *pro confesso* had been entered. From that decree the complainant appealed to this court, and now seeks to reverse that decree.

Three errors are assigned in this court, as follows : (1.) That the Supreme Court of the Territory erred in reversing the decree of the District Court of the county.    (2.) That the Supreme Court of the Territory erred in assuming, without evidence, that every thing had been done by the agent that was required by the power of attorney to give validity to the deeds of conveyance.    (3.) That the said Supreme Court erred in holding that it was not incumbent upon the respondents to prove that the deeds to them were executed by the agent in good faith.

Before proceeding to the examination of the alleged errors of the court below, it should be remarked that the bill of complaint waived an answer under oath, and prayed that the several deeds of conveyance might be cancelled, and that the lands in controversy might be restored to the complainant, wholly discharged from the said conveyances.    Separate admission was made by the respondents, in their amended answers, that each held certain described portions of the lands claimed under deeds of conveyance executed by the alleged agent; and they severally denied all combination, wrong, and fraud, and averred that the lands in question had been conveyed to them for a valuable consideration by the alleged agent, in virtue of the powers of attorney annexed to the original answers.

Four exceptions to the amended answers were sustained by the court; but any remarks upon that subject may well be omitted, as the amended answers supplied all the alleged defects. Enough appears to justify the conclusion that the complainant owned a certain bounty-land warrant, and that he desired to locate the same on the lands described in the bill of complaint; that certain equitable interests in certain portions of the lands were claimed by certain residents of the city of Denver; and that the complainant, in order to avoid the interposition of any objections from that quarter to the contemplated location of his land-warrant, stipulated with the mayor of the city, and gave to him a bond to the effect, that, if he was permitted to locate the warrant without opposition, he would convey to every such equitable claimant a good title to his equitable interest, provided he should give satisfactory evidence of such claim, and pay therefor the sum of forty cents for such lot.

Such an arrangement would not execute itself, and could not be carried into effect in a manner satisfactory to the parties, without some agency; and, to effect that object, the complainant, on the 14th of June, 1864, constituted and appointed one James Hall his true and lawful attorney, " to act upon the application and demand of any person or persons actually owning " town-lots situate in Denver City, within the lands described in the bill of complaint, and showing such ownership " by abstracts of title properly certified by the county clerk of the county," . . . and upon payment of forty cents for each and every lot, and the further expenses of every name and nature, "in accordance with the tenor and meaning of a certain bond executed ' *by me* ' to the mayor of Denver City, in trust for the citizens thereof; " and upon the fulfilment of the said requirements, and all others, as intended and mentioned in said bond, to make, execute, and deliver good and sufficient deed or deeds, with covenants of warranty, to any person or persons that may apply for the same within three months from the date of said bond, and in compliance with the same; giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as he might or could do if personally present, with full power of revocation, thereby ratifying and confirming all that his attorney or his substitute should lawfully do or cause to be done by virtue thereof.

Beyond doubt, the authority conferred was sufficient to warrant the agent to execute the deeds; and it appears by the recitals of the instruments that the deeds were executed the same month and year as the power of attorney.

By the terms of the power, the application and demand were required to be made within three months from the date of the bond; but no reason is perceived for limiting the authority of the agent to adjudicate the claims to so short a period. More time might be required for proofs and investigation; and there is nothing in the power of attorney which forbids the agent from taking such time for the purpose as was necessary in order to do justice between the parties.

None of the deeds were introduced in evidence, except the

one to the first-named respondent, which bears date Dec. 3, 1864, and which, it is conceded, may be regarded as a sample of the others. Nothing therein contained is inconsistent with the power of attorney given to the agent by the complainant; and the amended answers allege that the respective respondents, within three months from the date of the bond mentioned in the first power of attorney, made application to the attorney for a deed of the lots conveyed to them respectively, and that the several respondents complied with and fulfilled all the terms and conditions of the power of attorney and of the bond therein mentioned, and that the agent acted upon the application and demand, as therein required, and that he pronounced and decided in favor of the same, and conveyed the premises in question to the several respondents for a valuable consideration.

No proof of fraud was introduced by the complainant; and of course it is unnecessary to remark upon that question, except to say that the answers, though not under oath, are yet sufficient as a pleading to bring the complainant within the rule, that he who alleges fraud must prove the allegation, or fail to recover upon that ground.

Complainant denies that any such bond as that set up in favor of the respondents was ever given to the mayor of Denver City: but the deposition of his father proves that he, the father, gave it in behalf of the complainant; and the manner in which it was lost, and the recitals in the power of attorney, are sufficient to prove its existence, and to show that the complainant at that date recognized the covenants of the bond as valid and obligatory; that it was executed to the mayor in trust for the persons claiming equitable interests in the premises in question; and that the power of attorney was executed to the agent in order that he might act upon the application, and demand of those claiming such equitable interests.

Such action of the attorney was required to ascertain the extent of the respective claims; and the provision of the power was, that the attorney, when the extent of the interest was ascertained, should execute and deliver to the owner of such right a good and sufficient deed, with covenant of warranty, if the claimant made the required application for the same within

the time specified, and complied with all the other conditions of the power of attorney.

Two years after the power was given, — to wit, on the 9th of March, 1866, — the power of attorney was revoked by the complainant; and it appears that on the 17th of June, 1864, he gave another power to the same party, authorizing him to take possession of all land in which he, the principal, was interested in the county of Arapahoe, and to grant, bargain, and sell the same on such terms as he, the agent, should see fit, and to execute and deliver to the purchaser good and sufficient quitclaim-deeds of the same; which, it seems, continued in force until the 22d of April, 1867, when it was revoked by the complainant.

Registry of the first power of attorney was made in the office of the recorder for Arapahoe County on the 23d of June, 1864, and of the second in the same office on the 12th of March, 1869, as appears by the certificate of the recorder. Concede that all the other deeds were executed about the same time as the one given in evidence as an example, and it follows that they were executed more than a year before the first power of attorney was revoked; and, inasmuch as nothing appears to the contrary, the conclusion from the record must be that the power of attorney was in full force when the several conveyances were executed by the agent.

Grant that, and still it is insisted by the complainant that the defence is incomplete, because the respondents did not prove affirmatively that the agent, in executing the power, complied with the directions contained in the instrument under which he acted.

Sufficient has already appeared to show that the limitation of time in the power of attorney applies only to the period in which the parties claiming such equitable interests in the lands should make the required application to the attorney of the principal, and not to the period within which the attorney should execute the deeds. His authority to make the conveyances is without limit as to time, provided the application was made within three months from the date of the bond: from which it follows that the deeds of conveyance show on their face that they were executed within the limitations of the

power of attorney; and in such case the presumption is, that the trust reposed in the attorney was executed in good faith. Where the deed in such case is apparently valid, courts of justice will not infer any thing against its validity. *Very* v. *Very,* 13 How. 360.

Authority to make the conveyances was clearly conferred, if the agent complied with the directions given in the power; and the rule is, that, if the deed is apparently within the scope of the power, the presumption is that the agent performed his duty to his principal. *Morrill* v. *Cone,* 22 How. 82; *Doe* v. *Martin,* 4 Term, 39; *Rail* v. *McKernan,* 21 Ind. 421; *Wilburn* v. *Spofford,* 4 Sneed, 704; *Marr* v. *Given,* 23 Me. 55.

Subject to certain exceptions, not applicable in this case, the general rule is, that the presumption in favor of the conveyance will be allowed to prevail in all cases where it was executed as matter of duty, either by an agent or trustee, if the instrument is regular on its face. 1 Taylor on Ev., sect. 116.

Facts will not be presumed against a deed of conveyance which on its face has all the legal requisites to make it a valid instrument. *Burr* v. *Galloway,* 1 McLean, 496.

Instead of that, the rule is, that he who would invalidate such a deed must impeach it by affirmative proof. *Polk* v. *Wendell,* 9 Cranch, 87; *Bagnal* v. *Broderick,* 13 How. 450; *Minter* v. *Crommelin,* 18 id. 87; *Bank* v. *Dandridge,* 12 Wheat. 70.

Matters not assigned for error will not be examined, as no such matters are open for argument under the rules of this court.

Considerable effort is expended to show that the deeds of conveyance were executed under the first power of attorney; in which proposition the court here is inclined to concur, as the clear inference is that they all contain covenants of warranty: but the court does not concur with the complainant that the attorney was not authorized to execute the same under the first power, nor that there is any evidence, in any view of the case, that he acted in bad faith. Charges of bad faith are easily made; but they are of no avail to the party making the same, unless he introduces competent evidence to support the accusation.

Even the complainant admits that equitable interests did exist, and that the parties, if they established such rights by abstracts of title, properly certified by the county clerk of

Arapahoe County, and made the required application to the attorney for a deed, within three months, was to have such a deed with covenants of warranty, on the payment of a merely nominal consideration; but he insists that the attorney exceeded the power conferred, because the deeds do not bear date within three months from the date of the bond. Our views upon that subject have already been expressed; and we have only to repeat, that the limitation applies to the time of making the application and demand, and not to the time in which the deed was to be executed and delivered, if it was executed within a reasonable time after the adjudication by the attorney.

Examined in the light of the pleadings, and the facts and circumstances exhibited in the record, it is clear that the charge of fraud is not sustained, and that the burden of proof is upon the complainant to prove the allegation that the deeds of conveyance are invalid for any reason not apparent on their face; and if so, then it is equally clear that there is no error in the record.                                        *Decree affirmed.*